214 N.J. Super. 220 (1986)
518 A.2d 786
STATE OF NEW JERSEY
v.
JOSEPH PARIS, JR.
Superior Court of New Jersey, Law Division Burlington County.
Decided May 1, 1986.
*221 Robert L. Sexton for defendant (Wells & Singer, attorneys).
Terrie-Anne Duda, for plaintiff (Stephen G. Raymond, Burlington County Prosecuting Attorney; Christopher Stockton on the brief).
HAINES, A.J.S.C.
Defendant, Joseph Paris, Jr. appeals from a refusal of the Bordentown Township Municipal Court in Burlington County to dismiss a complaint charging him with drunk and careless driving. This court, addressing the appeal, concludes that the motion was denied for improper reasons, requiring a remand.
Defendant was issued a summons on October 19, 1985. It required his appearance in the municipal court on November 20. On October 21, he retained counsel. Counsel called the clerk of the court on October 28 (when he learned the matter had been rescheduled for November 6) and obtained a continuance so she could obtain discovery material from the State. A discovery request was sent to the State on the same day. On November 4, counsel received notice from the court scheduling the trial for November 20. He received the State's DWI report on November 12 with a request for notification of any defense expert witnesses to be called at the trial. On that date, defendant obtained an expert, transmitted the State's discovery material to him and requested a report. On the same date, he requested the clerk of the court to arrange a continuance until December 18, 60 days from the date of the issuance of the summons. He confirmed the request by letter to the municipal *222 court prosecutor, also advising him of the name of the expert witness. On November 18, he received notice scheduling the hearing for the requested date of December 18, 1985; a copy of that notice was sent to the state trooper who issued the summons. On November 19, 1985, he was advised by the State that it intended to produce an expert witness. On November 20, he demanded a copy of the State's expert's report from the prosecutor. Defense counsel received his expert's report on November 22, 1985. On December 2, 1985, defense counsel requested a further postponement from December 18, 1985 because his expert witness had hearings scheduled in another municipal court on that date.
On December 4, 1985, defense counsel received a letter from the Division of State Police advising:
... that the State Police will gladly provide you with material regarding the prosecution's expert as you requested. We ask only that you provide us first with the same information as it pertains to the defense expert you plan to introduce at trial ... Our expert will not be used as part of prosecution's case-in-chief, but rather, in rebuttal of your expert's contentions. Therefore, no report can be or will be prepared in advance.[1]
On that same date, State was provided with the report of defendant's expert and the matter was conferenced by the municipal court judge. He advised counsel that he could not grant a request for a continuance beyond December 18, referring to certain unidentified "directives" as a reason for his refusal. He therefore scheduled defendant's trial for 8:00 a.m. on December 18, making the date and time peremptory. This arrangement permitted the defense expert's early appearance in the Bordentown Municipal Court while accommodating his engagement to testify in another court on the same day. The State, despite defendant's request, has never delivered any discovery material to him except its DWI report.
Defendant appeared on December 18, 1985 at 8:00 a.m. with his expert witness. The case was called three times between *223 8:00 a.m. and 8:47 a.m. and no State witnesses appeared. Defendant moved to dismiss for lack of prosecution. The prosecutor advised the court that the complaining witness, Trooper Alexander, confusing his dates, thought the matter was scheduled for December 20, 1985 but that he and the State's expert could be available later in the day. He then requested a continuance to another date. Defendant objected to the continuance. He agreed to try the matter later in the day and, alternatively, to stipulate to the admission of the Trooper's report on the basis of which the defense expert could provide an opinion. The motion to dismiss was denied, the alternative offers rejected and the matter continued to January 15, 1986. The Court, in denying the motion, relied in part upon certain unidentified "guidelines."
The prosecutor in arguing the appeal, identified these as two directives issued by the Administrative Office of the Courts ("AOC") and claimed that they provide authority for the denial of the motion to dismiss.
An administrative rule adopted by the Burlington County Assignment Judge requiring drunk driving cases to be tried within 60 days was discussed and enforced in State v. Potts, 185 N.J. Super. 607 (Law Div. 1982). The rule, however, did not long survive. In State v. Detrick, 192 N.J. Super. 424 (App.Div. 1983), the court held that speedy trial rules, not administrative rules, governed dismissals for lack of prosecution. Later, the New Jersey Supreme Court adopted its own 60-day directive for drunk driving cases. Directive # 1-84, contained in a memorandum from Chief Justice Robert N. Wilentz (dated July 26, 1984), is still in force and has the same effect as the assignment judge's directive. However, in apparent recognition of Detrick, the directive was made subject to speedy trial rules. Consequently, it is not a consideration when addressing a motion to dismiss.
A second directive, circulated by the AOC on October 22, 1985, was set forth in the following "Bulletin Letter":

*224 ADMINISTRATIVE OFFICE OF THE COURTS
 Justice Complex  CN 037 MUNICIPAL COURT
 Trenton, New Jersey BULLETIN LETTER
 #9/10-85
To the Judges of the Municipal Courts:
DISMISSALS FOR LACK OF PROSECUTION
It has come to our attention that in some instances, municipal court judges may be dismissing drunk driving cases because of the failure of the police officer to appear.
Please be advised that if the complaining witness fails to appear, the judge should not automatically dismiss the complaint, especially if the complainant is a police officer. If the defendant is in court and ready to proceed the judges should question the court clerk or municipal prosecutor as to any notice given to the complainant and an attempt to contact the complainant should be made immediately. In most instances there should be no difficulty in contacting local officers and having them come immediately to the court. Before dismissing a complaint for lack of prosecution, the judge should consider all factors, including the seriousness of the charge, so there is no miscarriage of justice. In appropriate cases, the judge may postpone the hearing and fix a new trial date.
If an officer did not appear and the case is dismissed for lack of prosecution, the judge should, in writing, so notify the Chief of Police or officer in charge of the State Police Barracks, or the person in charge of the particular enforcement agency and request a written explanation. If there are any problems of communication between the court and enforcement agencies regarding appearances by officers, the judge should see that they are corrected. When warranted, the judge may refer the matter to the County Prosecutor or the Attorney General for an investigation.
The municipal court judge should not have placed any reliance upon the advice contained in this letter. It cannot affect the present appeal.
The Administrative Director of the Courts is appointed by the Chief Justice of the Supreme Court who is the administrative head of the court system. N.J. Const. (1947) Art. VI, § VII, par. 1. Rules governing the administration of our courts are made by the Supreme Court. N.J. Const. (1947) Art. VI, § II, par. 3. Consequently, the Director acts as the agent of the Chief Justice and of the Supreme Court. Administrative directives issued from his office are therefore not only entitled *225 to great respect but have binding effect with reference to management matters in the court system. Neither he nor the Supreme Court, however, can direct the exercise of judicial discretion. In our system of justice, judges act independently. They must if the court system is to maintain integrity. Canon 1 of the Code of Judicial Conduct provides:
An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should himself observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective.
In re Gaulkin, 69 N.J. 185, 192 (1976), referred to our court system as "independent of partisan political or other outside pressures of any kind. So was and is being served the interest of the people of New Jersey in an independent judiciary." The United States Supreme Court, in Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1871), said:
It is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself. Liability to answer to everyone who might feel himself aggrieved by the action of the judge would be inconsistent with the possession of this freedom, and would destroy that independence without which no judiciary can be either respectable or useful. [80 U.S. at 347]
The issue of independence usually arises in a setting involving an encroachment by one branch of government upon the powers of another. Here, the question is one of encroachment upon judicial independence by the administrative arm of the court system itself, but the rule can be no different. Destruction from within is as unacceptable as destruction from without.
The Director's "Bulletin Letter" trespassed upon judicial territory. It advised municipal court judges how to act when deciding motions to dismiss. Such decisions are judicial decisions. State v. D'Orsi, 113 N.J. Super. 527 (App. Div. 1971), certif. den. 58 N.J. 335 (1971). Consequently, the directive must be disregarded.
Judicial reliance upon any of the directives presents other obvious constitutional problems. The instruction provided by *226 the "Bulletin Letter" is markedly discriminatory. It singles out drunk driving cases for special treatment. It deals only with complaining witnesses who fail to appear "especially if the complainant is a police officer," thus providing selective treatment, not only for the State, but for particular State witnesses. Elaborate procedures are to be followed by municipal court judges when the State's witness (but only the State's witness) does not appear. In those cases, the judge is encouraged not to dismiss. The bulletin does not require the same considerate treatment of defendant or defense witnesses. No judge may rest the exercise of his or her discretion upon so lopsided an approach. To do so would be a denial of the constitutional right of equal protection. U.S. Const., Amend. XIV; N.J. Const. (1947) Art. I, par. 1. Wilson v. Long Branch, 27 N.J. 360 (1958) states the rule:
The requirement of equal protection is satisfied if all persons within a class reasonably selected are treated alike. And a classification is reasonable if it rests upon some ground of difference having a real and substantial relation to the basic object of the particular enactment or on some relevant consideration of public policy. [at 377]
Obviously, the parties to a criminal proceeding are within the same class when often important questions of adjournment are addressed.
Under the circumstances, this matter is remanded to the Bordentown Township Municipal Court for reconsideration of the dismissal motion in the light of this opinion. In the event the judge of that court, in the exercise of judicial discretion, decides that the motion should not be granted, the imposition of financial sanctions against the State should be considered. See State v. Audette, 201 N.J. Super. 410 (App.Div. 1985), in which the Appellate Division said:
We conclude that the better course would have been to grant the State's motion for postponement, its first motion in that regard. The judge could have sanctioned the State for the demonstrable expenses defendant bore to attend the aborted hearing of November 9. Such a sanction of out-of-pocket costs and expenses, if imposed by the judge, would have been sufficient in the circumstance. [at 414, citations omitted]
NOTES
[1] A response of doubtful validity.