219 N.J. Super. 121 (1987)
529 A.2d 1056
STATE OF NEW JERSEY, PLAINTIFF,
v.
TODD H. PERKINS, DEFENDANT.
Superior Court of New Jersey, Law Division, Burlington County.
Decided April 10, 1987.
*122 Terri-Anne Duda for plaintiff (Stephen G. Raymond, Burlington County Prosecutor, attorney).
Allen S. Ferg for defendant (Madden, Ferg, Barron & Gillespie, attorneys).
HAINES, A.J.S.C.
On October 10, 1986 defendant Todd H. Perkins allegedly drove his car into a parked vehicle, struck a telephone pole, spun around, and turned over. He was injured. A police officer, arriving on the scene after the accident occurred, smelled a "moderate odor" of alcohol on Perkins' breath and charged him with drunk driving in violation of N.J.S.A. 39:4-50. The officer sent Perkins to a hospital where he received treatment and was given a blood-alcohol test.
*123 Defense counsel, having entered a not-guilty plea on behalf of Perkins on November 10, 1986, appeared with him in the Cinnaminson Township Municipal Court on December 4, 1986, ready to proceed with trial. The State was not ready and requested a continuance. It had failed to obtain the hospital report and subpoena Dr. Chow, the chemist whose testimony was needed in order to prove the results of the blood test. Defense counsel objected and moved for a dismissal of the complaint. He noted that he had not been advised of the State's dereliction until that moment, had not been asked to consent to a continuance, and was ready to proceed. He cited State v. Paris, 214 N.J. Super. 220 (Law Div. 1986), in support of the motion. The municipal court judge, finding Paris inapplicable because it dealt with a discovery problem, denied the defense motion and granted a continuance to January 8, 1987. He also directed the municipal prosecutor to make arrangements with the court clerk so that she could subpoena the missing witness for the second hearing. The following colloquy then took place:
Mr. Ferg: Judge, can I ask that January 8th be a date certain?
The Court: Yes.
Mr. Ferg: Okay, and so if the case is not prepared to be moved at that time the defense will be entitled to a dismissal?
The Court: Yes.
(To the Prosecutor): ... But let us know by tomorrow if that's not a date.... If you have some problem with it, I want to know now instead of facing the problem on January 8th and have Mr. Ferg make a motion to dismiss.
Defendant and his counsel appeared on January 8, 1987, ready to proceed. Again, the State was not ready; Dr. Chow had not been subpoenaed, apparently as a result of the court clerk's illness. The State was represented by a newly-appointed prosecutor who said he became aware of the court's list that evening although he had received it in the mail earlier that week. He requested a further continuance. Defense counsel objected and moved for dismissal, stressing the day-certain-dismissal promise. The Court said:

*124 ... generally the subpoenaeing of the State's witnesses is handled by the Court's offices. We are all human and errors do take place. The doctor was not subpoenaed by the Court's offices, and for that reason is not here tonight, because he doesn't know to be here tonight. The State, I feel, would be prejudiced by the Court's mistake, and I don't think that's fair nor is it fair to prejudice the defendant because of the Court's mistake. You have to balance those equities here.
It denied the dismissal motion.
Later, defense counsel, said:
I just want to make it clear to the record, that it is the defense position that it is the State's responsibility to issue the subpoena, not the court clerk. Although that may be the court clerk's assumed role or the prosecutor may have relied upon the Court to issue the summons, it is the prosecutor's responsibility to issue the summons for his witnesses, not the arm of the Court, the court clerk.
The Court responded:
I think Judge Haines' decision of State v. Paris is somewhat akin to what's occurring here tonight. And with the Chief Justice's memo concerning State v. Paris it places a little bit of confusion as to whom I'm supposed to follow. I assume I'm supposed to follow the Chief Justice, and therefore I'm following the guidelines set forth by him. If State v. Paris was the law of this County the result may very well be different.
Defendant filed an interlocutory appeal seeking a dismissal of the complaint on the grounds argued below. The appeal has been allowed. This court now dismisses the complaint.
The decision to dismiss, an exercise of judicial discretion, cannot be arbitrary. It must be "founded on the facts and the applicable law and not simply an undisciplined whim." State v. Daniels, 38 N.J. 242, 249 (1962). In the present case defendant was twice ready for trial and twice frustrated. The Supreme Court's 60-day goal for the disposition of drunk-driving cases was long past. Directive # 1-84 (July 26, 1984). Perkins was put to the cost and inconvenience postponements always cause  all resulting from the State's lack of preparation and discourteous failure to warn defendant of the need for postponements. The first postponement was allowed over the defense objection with a clear warning to the State that it must be ready on the new date then set. That date was fixed by the court as a "date certain," its promise that the case would then be tried. That promise was underlined by the court's further *125 promise that the complaint would be dismissed, if the State was not then ready to proceed. The State, despite these promises and the dismissal warning, was not ready. The court was nevertheless accommodating and granted its second postponement request. This was an arbitrary, and therefore improper, discretionary decision. A court's promise is sacrosanct, if, as here, it is not based upon erroneous information or mistaken legal principle. It is a promise which must be kept. The integrity of the judicial system demands no less.
Even without the court's promises, the State's excuses for its failures did not entitle it to a second postponement. The change of prosecutors provided no reason for neglecting trial preparation. The new prosecutor received the trial list several days in advance but made no effort to determine the status of the case, the need for witnesses, the day-certain listing or the court's promise to dismiss. This information was readily obtainable from the record, the former prosecutor, probably the court clerk and surely defense counsel. The prosecutor's apparent reliance upon the court clerk and the police to prepare the case, when he did not instruct them or make any effort to determine trial readiness, was unfair to a trial-ready defendant and a disservice to the State. Responsibility for case preparation rests upon the prosecutor alone. It is a responsibility which cannot be shifted to others.
The prosecutor's reliance upon the court clerk to serve his subpoena was improper. The clerk is a judicial officer who must be and must appear to be impartial. She can issue subpoenas, R. 1:9-3, but cannot serve them for any party without violating that rule. Service arrangements in the present case identified the clerk with one party: the State. That is wrong. The clerk must be neutral. In State v. Ruotolo, 52 N.J. 508 (1968) the Court said:
In New Jersey, the municipal court clerk or deputy clerk is completely independent of any agency charged with the apprehension and prosecution of offenders .... this Court has instructed all municipal courts that "no municipal *126 court employee or other employee assigned to serve a municipal court may have any connection with the police department."
Although the clerks and deputy clerks are appointed by the governing authorities, as are most of the municipal court judges, there is no question that the branch of government to which a clerk or deputy clerk is reponsible is the judiciary. As an official of the municipal court, he is as insulated from prosecutorial influence as is the judge of the court. Merely because he does not wear a robe does not detract from the clerk or deputy clerk's neutrality. [at 512-513; citations omitted]
The New Jersey Municipal Court Manual (January 1983),[1] provides:
It is important that law enforcement and police tasks be completely separated from those of the judiciary. It is therefore the policy of the Supreme Court that persons who perform any court duties or functions must not perform any duties or functions for the police and vice versa. The municipal court clerk or any deputy court clerk must be a neutral and detached judicial officer. State v. Ruotolo, 52 N.J. 508 (1968). Thus, each municipal court judge is urged to take the precautions necessary to prevent any false conclusions in the public mind that the court clerk is an adjunct of law enforcement agencies rather than a separate and independent official. [at 6-7]
R. 1:9-3 requires that subpoenas be served "personally." It is understood that the practice in Cinnaminson is for the court clerk to make service by mail. Such service may or may not be effective; since it is not personal service it provides no excuse for a postponement in the event a witness so served does not appear. The important principle to be underlined, however, is that the clerk, while being permitted to issue a subpoena by R. 1:9-1, may never serve one.
It was the responsibility of the prosecutor to produce the witness and be sure that the subpoena had been served, notwithstanding his improper reliance on the clerk for that purpose. He made no inquiry of the clerk in this regard and no inquiry of the intended witness. Indeed, he simply made no preparation for the trial of the case. Drunk driving charges are extremely serious. The State is expected to prepare them accordingly. A prosecutor whose only preparation for the trial *127 of an important case occurs after he arrives in court on the date fixed for trial cannot expect lenient treatment when he discovers that the he is not ready for trial. Both State and defendant are entitled to much more. There is not the required equality of treatment when a defendant, prepared for trial, is not allowed to proceed because a prosecutor, not prepared for trial, is given more time to do so. Postponement requests must be considered, in part, in the light of preparation efforts. If they are not, parties will have no incentive to prepare. Our system is designed with incentives which run in the other direction.
The failure of the clerk to serve the subpoena was, of course, awkward. The court was obliged to assume part of the blame. But that fact should not have favored the State. The court is one part of our tripartite system of government. Its failures cannot be permitted to injure a defendant who had nothing to do with them and no control over them. That is especially true when, as here, the court, through its clerk, was being used improperly by the State to assist in the preparation of its case against defendant.
The United States Supreme Court, in considering speedy-trial issues little different from the issues presented here, has said that delay occasioned by the courts must be charged against the State, not defendant. Justice Powell, in his majority opinion in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), said:
A defendant has no duty to bring himself to trial; the State has that duty as well as the duty of insuring that the trial is consistent with due process. Moreover ... society has a particular interest in bringing swift prosecutions, and society's representatives are the ones who should protect that interest. [at 527]
....
But the rule we announce today, which comports with constitutional principles, places the primary burden on the courts and the prosecutors to assure that cases are brought to trial. [at 529, 92 S.Ct. at 2191]
*128 Justice Brennan, joined by Justice Powell, said in a concurring opinion in Dickey v. Florida, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970):
If the defendant does not cause the delay of his prosecution, the responsibility for it will almost always rest with one or another governmental authority. The police and prosecutor are not the only governmental officials whose conduct is governed by the Speedy Trial Clause; it covers that of court personnel as well. [at 51, 90 S.Ct. at 1575; emphasis supplied]
A word about State v. Paris, supra, and the responding Supreme Court memorandum is necessary. The court below apparently thought that Paris required the granting of the dismissal motion while the memorandum prohibited it. That is not a correct reading of either.
Paris stands for the principle that judges have complete independence when acting judicially, that their exercise of judicial discretion cannot and must not be restricted, challenged or otherwise eroded. That principle is central to our system of justice. Its absence would threaten all of our civil rights. Paris was controversial and criticized only because it advised a municipal court judge to disregard a bulletin issued by the Administrative Office of the Courts (AOC) which, in the belief of the Paris court, encroached upon the absolute right of that judge to exercise independent judicial discretion in deciding whether to dismiss a drunk-driving complaint. The Supreme Court's memorandum clarified the bulletin's directions. However, it also acknowledged a judge's discretionary power to grant a dismissal motion provided all aspects of that motion are considered. This accords with Paris. Furthermore the memorandum, like Paris, reaffirmed the principle of judicial independence, saying
This directive ... leaves Municipal Court judges completely free to exercise their judicial discretion as they see fit. It does not in any way impair the integrity of that court.
It added:
The Bulletin letter is addressed to a specific problem, and deals only with that problem. Obviously, it is assumed the Municipal Court judge will continue to deal properly with other problems. There is not the slightest implication in the Bulletin letter that defendants should not be treated with equal consideration *129 when they have difficulty bringing their witnesses in, or that their interests are not to be considered in these matters, or that the absence of witnesses other than police is not to be weighed. We assume that every Municipal Court judge who reads the Bulletin Letter understands that in suggesting that the judge be aware of the consequences and interests involved both in these problems and others.
We expect that all judges will continue to do what they have done in the past: conform with the rules and directives of this Court, the Chief Justice, and the Administrative Director, and conscientiously consider all other material forwarded by us, or on our behalf  like the Bulletin letter. These have not compromised judicial independence in the past, and we do not expect that they will in the future.
The memorandum thus makes clear (1) that municipal court judges must exercise their discretion with independence, and (2) that in doing so, in the context of a dismissal motion, they are to consider all factors, including those set forth in the bulletin. The municipal court judge below erroneously read the Supreme Court memorandum and the AOC bulletin as prohibiting dismissal. He did not weigh all factors in refusing to dismiss. The factors which should have been weighed in the instant case are set forth in this opinion. They require a dismissal of the complaint. In reaching that conclusion, this court has considered the bulletin, Paris and the memorandum. The conclusion, an exercise in the judicial discretion championed by all three, abuses none.
NOTES
[1] Now superseded by The New Jersey Municipal Court Procedures Manual (1985) which does not contain the quoted language.