983 A.2d 1155 (2009)
411 N.J. Super. 1
STATE of New Jersey, Plaintiff-Respondent,
v.
Christos E. TSETSEKAS, Defendant-Appellant.
DOCKET NO. A-1832-08T4.
Superior Court of New Jersey, Appellate Division.
Submitted October 27, 2009.
Decided December 14, 2009.
*1157 Berman, Sauter, Record & Jardim, P.C., attorneys for appellant (Thomas S. Doerr, Cedar Knolls, of counsel and on the brief).
John L. Molinelli, Bergen County Prosecutor, attorney for respondent (Annmarie Cozzi, Assistant Prosecutor, of counsel and on the brief).
Before Judges CARCHMAN, LIHOTZ and ASHRAFI.
The opinion of the court was delivered by
LIHOTZ, J.A.D.
Defendant Christos E. Tsetsekas appeals from his conviction for driving while intoxicated (DWI), N.J.S.A. 39:4-50, after trial de novo in the Law Division. As a consequence of his conviction, defendant's driving privileges were suspended for three months, he was assessed applicable fines and costs and ordered to attend twelve hours of education at the Intoxicated Driver Resource Center. On appeal, defendant raises these issues:
POINT ONE
THE LOWER COURT ERRED IN FINDING THAT THE APPELLANT'S RIGHT TO A SPEEDY TRIAL WAS NO[T] VIOLATED.
POINT TWO
THE LOWER COURT ERRED IN FINDING THAT THERE WAS SUFFICIENT EVIDENCE TO ESTABLISH PROBABLE CAUSE.
POINT THREE
THE LOWER COURT ERRED IN FINDING THAT THE BREATHALYZER RESULTS WERE PROPERLY ADMITTED INTO EVIDENCE.
We have considered these arguments in light of the record and applicable legal standards. Under the facts of this case, we conclude the extensive delay in adjudicating this matter, caused by the State's repeated lapses in preparation, infringed upon defendant's due process rights such that his conviction must be reversed and the charge dismissed. Consequently, we need not address the remaining points raised on appeal.
We summarize the facts relevant to our review. On May 8, 2007, defendant was involved in a single-car accident while traveling on Route 80 in Elmwood Park, when his wheel became dislodged. Trooper Nicholas Rubino arrived at the scene. Based upon Trooper Rubino's observations of the condition of defendant's vehicle, his physical appearance and unsatisfactory performance on field sobriety tests, Rubino arrested defendant. Rubino read defendant his Miranda[1] rights and transported him to the Totowa police station where Sergeant Michael Watson, a certified breathalyzer operator, administered two breathalyzer tests. Defendant registered a .09 blood alcohol level on each test. Accordingly, Trooper Rubino issued a summons charging defendant with DWI.
Defendant first appeared in the Elmwood Park Municipal Court on May 15, 2007. He entered a plea of not guilty and trial was scheduled for July 17, 2007. On that date, defendant appeared with his attorney. However, the State requested an adjournment as the prosecutor had just responded to defendant's discovery requests that evening. In relisting the matter for trial on August 14, 2007, the municipal *1158 court judge stated: "That's going to be a relatively firm date since this now is beyond our 60-day guideline. So the next date you get will be for trial. So make sure you're ready."[2]
On the relisted trial date, the State revealed it had yet to provide defendant with a copy of the patrol car videotape of his stop and arrest. The videotape was not included in the initial discovery and, although requested, had not been sent by the State Police. The prosecutor advised he needed "[t]hirty []  maybe 60 days" to obtain the videotape. The court suggested the request be expedited because "it's beyond [] our 60-day guidelines."
Subsequent trial dates on September 14 and October 9 were adjourned because the videotape had not been received. Defendant and counsel next appeared on November 13, 2007. The prosecutor again sought a continuance. He explained the in-car videotape had arrived the prior week, but "the State ha[d] not even had an opportunity to view it[.]" Also, because the parties had been discussing a possible plea agreement, the prosecutor had not subpoenaed Trooper Rubino, who he learned was not available that evening. Finally, the State acknowledged the test certificate for the breathalyzer had not been produced. In making his continuance request, the prosecutor sought a special trial listing.
Defense counsel objected, stating,
the fact of the matter is this is the fourth time that we've been here. We also have an expert who's coming up from South Jersey. I want to make certain that when we come the next time, that we are scheduled. That we do, in fact, try the case. I ... request that the [c]ourt list [th]is as a try or dismiss matter.
The court rejected defendant's request even though the matter was the oldest case on its docket. The judge advised the prosecutor, "we are going to start it next time." The case was then scheduled for 8 p.m. on December 4, 2007.
Unfortunately, Trooper Rubino suffered a death in his family and the matter was relisted for December 18, 2007. On that date, defendant and counsel appeared at 7:30 p.m. The court concluded all other cases on its calendar and called this matter at 9:20 p.m. The State responded that its witnesses had not arrived. This colloquy followed:
THE COURT: [H]ere's the concern.... Normally, we have to give a fair degree of leeway on  in DWI cases, but this case goes back to May of 2007. It's probably the second oldest  ... case on my calendar. ... We're supposed to dispose of them in 60 days.
[THE PROSECUTOR]: I recognize that, Your Honor. ... I don't believe it was listed for try or dismiss tonight, Your Honor, so all I ask is that 
THE COURT: No. We don't normally list them try or dismiss, but that doesn't prevent a dismissal.
. . . .
[PROSECUTOR]: [Trooper Rubino] said as soon as he finishes processing the DWI defendant [he was working on] he could head down here. And he ... estimated it would be maybe a half hour or so from what I, you know, from five minutes ago, so 
THE COURT: And then you've still got the problem of Trooper Watson.

*1159 [PROSECUTOR]: That's correct, Judge.
. . . .
[DEFENSE COUNSEL]: We were here on a trial date approximately a month and a half, two months ago, or so, and the ... trooper again didn't show up because he ... was not of the understanding that there actually was a trial on that day. So we came prepared, and we were [adjourned].
. . . .
It was then, in fact, we asked at that point because we had had a number of occasions in the past where we had been here. I think I've been here maybe seven times or so. And we had asked... the last time that this matter be put on as a try or dismiss, and the [c]ourt expressed as it did here, that it typically does not put matters down on as [sic] a try or dismiss.
It was rescheduled for approximately two or three weeks ago or so. ... And now we're here, we're ready to go as well. I'd renew my application for dismissal of the case, Your Honor. I understand that it's unusual certainly for that to happen in the case of a DWI claim, but I think we have done everything that we're supposed to do. We  we've made multiple, multiple appearances before this [c]ourt. We've always been prepared to proceed.
Notwithstanding defendant's arguments, the court denied his motion and recessed. Trooper Rubino arrived sometime after 11 p.m., and trial commenced. Trooper Watson did not appear that evening. At the close of Trooper Rubino's testimony, the court continued the matter. Computer-generated notices were sent to Troopers Watson, Rubino and Luigi D'Corona, and trial was scheduled to resume on March 5, 2008. On that date, when the case was called, the State again sought a continuance because none of the State Troopers appeared. Defendant renewed his motion to dismiss. The court again denied the motion, suggesting the prosecutor was not at fault, and granted another adjournment.
On April 16, 2008, nearly one year from the date of arrest, the State concluded presentation of its evidence. The defense then presented its expert witness and defendant testified in his own behalf. Defendant was found guilty of DWI. After the court imposed sentence, defendant's request for a stay pending appeal was granted.
The appeal before the Law Division was heard on October 22, 2008. Defendant argued, as he does before this court, that: (1) he was denied a speedy trial; (2) the State lacked probable cause to arrest; and (3) the breathalyzer results were improperly admitted at trial. In denying defendant's argument that the delay denied him a speedy trial, the Law Division considered the fact that the matter was adjourned "at least seven times" and required "more than ten appearances[,][a]ll because the State was not prepared." However, the court concluded the defendant's right to a speedy trial was not denied, determining the delay was not "purposeful" and the prejudice suffered by defendant was not extensive. Following de novo review of the municipal court record, defendant was convicted of DWI and sentenced just as he was in municipal court. This appeal ensued.
The right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and imposed on the states by the Due Process Clause of the Fourteenth Amendment. Klopfer v. North Carolina, 386 U.S. 213, 222-23, 87 S.Ct. 988, 993, 18 L.Ed.2d 1, 7-8 (1967). "The constitutional right ... attaches upon defendant's arrest." State v. *1160 Fulford, 349 N.J.Super. 183, 190, 793 A.2d 112 (App.Div.2002) (citing State v. Szima, 70 N.J. 196, 199-200, 358 A.2d 773, cert. denied, 429 U.S. 896, 97 S.Ct. 259, 50 L.Ed.2d 180 (1976)). As a matter of fundamental fairness, excessive delay in completing a prosecution may qualify as a violation of a defendant's constitutional right to a speedy trial. State v. Farrell, 320 N.J.Super. 425, 445-46, 727 A.2d 501 (App.Div.1999) (citing State v. Gallegan, 117 N.J. 345, 354-55, 567 A.2d 204 (1989)). After all, "`[a] defendant has no duty to bring himself to trial; the State has that duty[.]'" State v. Merlino, 153 N.J.Super. 12, 17, 378 A.2d 1152 (App.Div.1977) (quoting Barker v. Wingo, 407 U.S. 514, 527, 92 S.Ct. 2182, 2190, 33 L.Ed.2d 101, 115 (1972)).
In Barker, supra, the United States Supreme Court announced a four-part test to determine when a delay infringes upon a defendant's due process rights. 407 U.S. at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 117. Courts must consider and balance the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Ibid.
In Szima, supra, New Jersey's Supreme Court adopted the Barker test. 70 N.J. at 200-01, 358 A.2d 773. These same standards also have been applied to municipal prosecutions. State v. Berezansky, 386 N.J.Super. 84, 899 A.2d 306 (App.Div. 2006), certif. granted, 191 N.J. 317, 923 A.2d 231 (2007), appeal dismissed, 196 N.J. 82, 951 A.2d 1036 (2008); Farrell, supra, 320 N.J.Super. at 446, 727 A.2d 501. Guided by Barker, the courts have examined speedy trial challenges in the prosecution of DWI matters.
In Farrell, we dismissed defendant's DWI conviction after the matter was adjourned twelve times and took 663 days before its eventual adjudication. 320 N.J.Super. at 451, 727 A.2d 501. We concluded the delay was "so egregious" that the defendant's burden with regard to the three other Barker factors was "correspondingly diminished." Id. at 453, 727 A.2d 501.
On the other hand, we affirmed the denial of a claim of excessive delay in a DWI trial held approximately six months following arrest. State v. Prickett, 240 N.J.Super. 139, 148, 572 A.2d 1166 (App.Div. 1990). Similarly, in Berezansky, supra, we rejected "defendant's contention that he was deprived of his constitutional right to a speedy trial based on the nearly five months that elapsed between his arrest and the beginning of his trial[,]" concluding defendant's proofs were insufficient. 386 N.J.Super. at 99, 899 A.2d 306.
In Fulford, supra, we upheld the Law Division's denial of the defendant's motion to dismiss despite a thirty-two month delay, which was attributed to the State's decision to hold prosecution of the DWI charge until the defendant's completion of pre-trial intervention on a separate indictable offense. 349 N.J.Super. at 194-96, 793 A.2d 112. After balancing all four Barker factors, we concluded the purpose of the delay, which was lengthy, significantly benefited the defendant, who had only recently filed a speedy trial motion.
Finally, in State v. Perkins, the Law Division's de novo review resulted in dismissal of a DWI charge although only three months had elapsed from the date of arrest. 219 N.J.Super. at 121, 125-26, 529 A.2d 1056 (Law Div.1987). The court's conclusion was based on the fact that the municipal court had ordered the matter scheduled for a "date certain" due to prior adjournments occasioned by the State's inability to proceed, and the State had again appeared unprepared on the final trial date. Ibid. The municipal court's failure *1161 to enforce its order prompted the Law Division to reverse the conviction and dismiss the charge. Ibid.
No single factor is a necessary or sufficient condition to the finding of a deprivation of the right to a speedy trial. Barker, supra, 407 U.S. at 533, 92 S.Ct. at 2193, 33 L.Ed.2d at 118. Rather, the factors are interrelated, and each must be considered in light of the relevant circumstances of each particular case. Ibid. In an analysis of a speedy trial challenge, a trial court must weigh the "`societal right to have the accused tried and punished'" and a defendant's right to be prosecuted "`fairly and not oppressively.'" State v. Dunns, 266 N.J.Super. 349, 380, 629 A.2d 922 (App.Div.) (quoting State v. Farmer, 48 N.J. 145, 175, 224 A.2d 481, cert. denied, 386 U.S. 991, 87 S.Ct. 1305, 18 L.Ed.2d 335 (1967)), certif. denied, 134 N.J. 567, 636 A.2d 524 (1993).
We now consider the trial court's application of these principles. "We have always recognized that ordinarily adjournments are within the discretion of the trial court." State v. Gallegan, 117 N.J. 345, 354, 567 A.2d 204 (1989). In reviewing the Law Division's findings, we reverse only if the court's determination is clearly erroneous. Merlino, supra, 153 N.J.Super. at 17, 378 A.2d 1152.
In concluding defendant was not denied a speedy trial, the Law Division judge made these findings:
In this case, thethe delay, ... was 327 days. And time is relative, I'm sure, when someone has something like a drunk driving charge hanging over their head every day is anxiety provoking, but we can't, you know, focus on normal anxiety, in terms of a prejudice caused by the delay.
....
We have ... extraordinary situations with the Municipal Courts. Practically speaking, they're part-time courts. They don't all meet even every week. The people working there are part-time prosecutors.
So, even though the ideal goal is 60 days, I don't know that, in and of itself, thethe length of the delay is something that weighs very heavily in this balancing test. And, you know, we thethe guidelines we have from the cases, 663 days in the Farrell case, this is not [an] inordinately long time for a matter to come to trial.
The reasons for the delays. Every delay was caused by the State's failure to be ready to proceed. And, as [c]ounsel points it out, it wasn't necessarily the prosecutor. It was no particular person, but it was the State. And the State, in general, has an obligation. Here, some of it was really regrettable, and II think, very frustrating to the defense, because they were there. They didn't ask for delay. They were very professional about the thing. And it got to the point where it was bordering on unreasonable.
If it had been any longer, I think the reason, combined with the length of time, may have pushed the balance of the scale, but, again, thethere was no purposeful delay. And so I think the the reasons and the length certainly would not weigh that heavily.
With regard to whether there was prejudice, again, the normal anxiety and certainly the cost of an attorney appearing again and again and again, it was a cost that should not have been incurred. But our case law tells us that expense alone is not a reason to find prejudice. It has to be something more than that.
And fourthly, thewhether or not the defendant asserted the right to speedy *1162 trial. I think the rightthe assertions were here.... But certainly [c]ounsel made apparent, and, as [c]ounsel points it out, the [c]ourt didn't need anybody to make it apparent. The [c]ourt made it apparent [] that this should not have been happening.
In balancing, itit's close, but I really believe, under the case law, because of the length of time that it waslet's say short of a year, and the best guidance we have with the case is approximately two years, so I am making a finding that the right to speedy trial, under the law, was not denied.
In deciding the delay was not excessive, the trial court measured the almost one-year delay experienced in this matter against the delay discussed in Farrell, which was twice as long. We reject such an approach.
There is no set length of time that fixes the point at which delay is excessive. The first step in analyzing the facts requires a court to remember that
[t]he New Jersey judiciary is, as a matter of policy, committed to the quick and thorough resolution of DWI cases. In 1984, Chief Justice Wilentz issued a directive, later echoed in Municipal Court Bulletin letters from the Administrative Office of the Courts, that municipal courts should attempt to dispose of DWI cases within sixty days.
[Farrell, supra, 320 N.J.Super. at 446-47, 727 A.2d 501.]
We do not suggest that any delay beyond the sixty-day goal is excessive. However, for the standard to have any meaning, municipal courts must continuously strive to assure prompt prosecution of DWI matters. Here, the 344 day dispositional period is more than five times the stated objective, and, as discussed below, the delays were numerous, mostly avoidable and largely unexplained.
Barker's second prong examines the length of a delay in light of the culpability of the parties. See Barker, supra, 407 U.S. at 529, 92 S.Ct. at 2192, 33 L.Ed.2d at 116. We concur with the trial court's finding that the delays were not deliberate attempts to hamper the defense. See id. at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117 (stating that purposeful delays are weighted "heavily" against the government). However, the State's inability to proceed required each adjournment. This was not a situation where the delay was occasioned by a "part-time" municipal court unable to accommodate trial time demands, as the Law Division suggested. The municipal court listed the matter every month from July to December 2007 and provided two trial dates in December. The limited testimony taken on December 18, 2007 was a consequence of a late-appearing State witness. Further, a continuance from this date was necessitated by the failure of another State witness to appear. Plainly, the State failed to properly appreciate the need to promptly provide discovery and coordinate the scheduling of its witnesses.
Here, as noted by the Law Division, "every delay was caused by the State's failure to be ready to proceed." Four adjournments were necessary because the State failed to fulfill its obligation to provide discovery and at least three were attributed to the nonappearance of the State Troopers. Adjournments should generally be granted to either party for legitimate reasons, including the unavailability of a necessary witness. Ibid. However, every rule has its limits. "Postponement requests must be considered, in part, in light of preparation efforts. If they are not, parties will have no incentive to prepare." Perkins, supra, 219 N.J.Super. at 126, 529 A.2d 1056.
*1163 The weight of the delay resulting from the reoccurring unavailability of the State Troopers, despite information that their appearance was required, falls on the shoulders of the prosecutor. The State must be responsible to produce its witnesses when trial is called. We also consider significant the fact that the State did not discover its witnesses' unavailability until the trial date, rather than securing their appearance ahead of time. Defendant and his counsel appeared and waited in court for hours only to learn the matter would not proceed. As a result of the miscommunication between the prosecutor and the State Police, the arresting officer was unable to appear until well into the night, and the breathalyzer administrator did not appear at all. Such circumstances are more than a "frustrating" inconvenience. In representing the State, the prosecutor and the police must accept responsibility for ensuring a defendant's right to a speedy disposition of the charges is respected. This requires expediting all necessary discovery and maintaining communication with police witnesses to assure their availability.
As required by Barker's third prong, defendant asserted his right to a speedy trial when timeliness became an issue. Defendant wrote a letter to the court and complained directly about the State's repeated adjournment requests and the excessive delay in prosecuting this matter.
In reviewing the final prong of the Barker test, prejudice to the defendant, we note the delay caused no prejudice affecting defendant's liberty interest or his ability to defend on the merits. Nevertheless, significant prejudice may also arise when the delay causes the loss of employment or other opportunities, humiliation, the anxiety in awaiting disposition of the pending charges, the drain in finances incurred for payment of counsel or expert witness fees and the "other costs and inconveniences far in excess of what would have been reasonable under more acceptable circumstances." Farrell, supra, 320 N.J.Super. at 452, 727 A.2d 501; Fulford, supra, 349 N.J.Super. at 195, 793 A.2d 112; see also Dunns, supra, 266 N.J.Super. at 380, 629 A.2d 922 (stating that the unavailability of evidence or the inability of the State to proceed can justify the "continued exposure of defendant to anxiety and expense for only so long"); Merlino, supra, 153 N.J.Super. at 15-16, 378 A.2d 1152 (holding that proof of actual trial prejudice is not "a necessary condition precedent to the vindication of the speedy trial guarantee").
The repeated delays and unnecessary appearances due to the State's ill-preparedness, which caused disruption of defendant's everyday activities, the consumption of time and money, and emotional anxiety and uncertainty, add up to more than "minimal" prejudice to defendant.
We emphasize that "`in the administration of justice[,] dismissal must be a recourse of last resort.'" Farrell, supra, 320 N.J.Super. at 447, 727 A.2d 501 (quoting Prickett, supra, 240 N.J.Super. at 147, 572 A.2d 1166). However, in criminal and quasi-criminal matters, fundamental fairness demands that all partiesthe State and the defenseseriously and diligently prepare and proceed to trial.
Under the facts presented, we conclude the State has fallen short in its responsibility, and the governmental interest in prosecution has been outweighed by defendant's individual right to a speedy trial. Farrell, supra, 320 N.J.Super. at 453, 727 A.2d 501. Accordingly, defendant's conviction is reversed, and the matter remanded for entry of an order of dismissal.
*1164 Reversed and remanded to the Law Division for further proceedings consistent with this opinion.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] The Municipal Court's reference is to Supreme Court Directive # 1-84 issued on July 26, 1984.