**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2760-14T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

RASHAN CALDWELL a/k/a RASHAUN
CALDWELL, CHRIS CALDWELL,
RASHAWN CALDWELL, RASHAN
HICKENBOTTOM, RASHAN
HICKENBOTTON,

    Defendant-Appellant.

_____

Submitted November 30, 2016 — Decided September 1, 2017

Before Judges Fuentes and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Indictment No. 13-06-0797.

Joseph E. Krakora, Public Defender, attorney for appellant (Al Glimis, Assistant Deputy Public Defender, of counsel and on the brief).

Fredric M. Knapp, Morris County Prosecutor, attorney for respondent (Paula Jordao, Assistant Prosecutor, on the brief).

PER CURIAM

    Defendant Rashan Caldwell appeals from a December 9, 2014 judgment of conviction for first-degree possession of a controlled

dangerous substance (CDS) with intent to distribute, N.J.S.A. 2C:35-5(b)(1), and second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-4(a)(1), charged in counts thirty-two and sixty-six, respectively, of Indictment No. 13-06-0797. Pre-indictment, pursuant to Rule 3:25-3, defendant moved to dismiss the complaints containing the charges that were later subsumed into Indictment No. 13-06-0797 for unreasonable delay in presenting the charges to a grand jury. After his motion was denied and Indictment No. 13-06-0797 was returned, defendant entered a negotiated guilty plea on September 10, 2014, and expressly reserved the right to appeal the denial of his speedy trial motion. In exchange, the State agreed to move the dismissal of the remaining fifty-three counts of the indictment,[1] as well as the dismissal of a second

---

[1] The dismissed counts consisted of first-degree leader of a narcotics trafficking network, N.J.S.A. 2C:35-3; ten counts of second-degree conspiracy to possess CDS with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and -5(b)(2) and N.J.S.A. 2C:5-2; ten counts of second-degree conspiracy to distribute CDS, N.J.S.A. 2C:35-5(a)(1) and -5(b)(2) and N.J.S.A. 2C:5-2; four counts of third-degree conspiracy to possess CDS with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and -5(b)(3) and N.J.S.A. 2C:5-2; two counts of third-degree possession of CDS, N.J.S.A. 2C:35-10(a)(1); third-degree conspiracy to possess CDS, N.J.S.A. 2C:35-10(a)(1) and N.J.S.A. 2C:5-2; second-degree possession of CDS with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and -5(b)(2); first-degree maintaining/operating a CDS production facility, N.J.S.A. 2C:35-4; four counts of second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a)(2); four counts of second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b); four counts of second-degree certain persons not to possess a firearm,

indictment, Indictment No. 10-10-1148 (the 2010 indictment),[2] in its entirety. The State also agreed to recommend an eleven-year term of imprisonment with a five-year period of parole ineligibility on count thirty-two, and a concurrent eight-year term of imprisonment with a four-year period of parole ineligibility on count sixty-six. On November 21, 2014, defendant was sentenced in accordance with the plea agreement. On appeal, defendant argues the trial court erred in denying his speedy trial motion and urges dismissal of Indictment No. 13-06-0797. We disagree and affirm.

---

N.J.S.A. 2C:39-7(b); three counts of second-degree possession of a firearm while in the course of committing or conspiring to commit a CDS offense, N.J.S.A. 2C:35-5 and 2C:39-4.1(a); two counts of second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1); two counts of first-degree attempted murder, N.J.S.A. 2C:5-1 and 2C:11-3; third degree aggravated assault with a deadly weapon, N.J.S.A. 2C:12-1(b)(2); fourth-degree conspiracy to unlawfully transport a firearm, N.J.S.A. 2C:39-9(d) and 2C:5-2; second-degree conspiracy to witness tamper, N.J.S.A. 2C:28-5(a) and 2C:5-2; and third-degree bail jumping, N.J.S.A. 2C:29-7.

[2] Indictment No. 10-10-1148 charged defendant with third-degree possession of CDS, N.J.S.A. 2C:35-10(a)(1); third-degree possession of CDS with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and -5(b)(3); third-degree distribution of CDS, N.J.S.A. 2C:35-5(a)(1) and -5(b)(3); third-degree conspiracy to possess CDS, N.J.S.A. 2C:35-10(a)(1) and N.J.S.A. 2C:5-2; third-degree conspiracy to possess CDS with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and -5(b)(3) and N.J.S.A. 2C:5-2; and third-degree conspiracy to distribute CDS, N.J.S.A. 2C:35-5(a)(1) and -5(b)(3) and N.J.S.A. 2C:5-2.

On November 4, 2010, the 2010 indictment was returned against defendant and a co-defendant. Defendant was arrested, posted bail and was released. On June 1, 2012, while the 2010 indictment was pending, defendant was arrested and held on multiple warrant-complaints charging him with over thirty-two offenses, including first and second-degree drugs and weapons related offenses stemming from allegations that defendant was the leader of a narcotics trafficking network and was involved in the 2011 attempted murder of two people. Twenty-eight others were also arrested and charged by way of complaint in connection with the allegations. Defendant's bail was set at $1 million but defendant was unable to post bail and remained incarcerated.

On March 11, 2013, defendant moved to dismiss the complaints pursuant to Rule 3:25-3. Although defense counsel acknowledged that he had received "a substantial amount of discovery" amounting to "well over 2,000, maybe 3,000, pages" of pre-indictment discovery including "thousands of hours of . . . tapes, many, many wiretaps, many applications for a wiretap," in a case that "promises to be an extremely complicated and lengthy case[,]" he urged the judge to dismiss the complaints based on the unreasonable delay in presenting the case to a grand jury.

On June 10, 2013, following oral argument, Judge Mary Gibbons Whipple denied defendant's motion in an oral opinion. Applying

the four-factor test enunciated in Barker v. Wingo, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), the judge first acknowledged that the delay was substantial and that defendant did not contribute to the delay. The judge noted that "a year and nine days passed between the . . . arrest" and the date the motion was heard. However, the judge pointed out that "there are cases where . . . a significantly longer period of time has not been found to be in violation of defendant's right to a speedy trial" and while "the delay here . . . tips slightly to the defendant's favor[, it] is not determinative . . . [a]nd the other three factors have to be considered."

Next, the judge considered the reason for the delay, noting that "[d]elays of scheduling and other failures . . . of the process for which the trial court itself was responsible are attributable to the State and not to the defendant." However, the judge concluded that there were no "purposeful delays . . . on the part of the State[.]" While the judge acknowledged that "[a] defendant has no duty to bring himself to trial" and considered the fact that defendant was incarcerated while the charges were pending, "the court recognize[d] that this [was] a complex case" and "[did] not think that the State ha[d] been sitting on their hands." Rather, according to the judge, in light of the fact that there were "[t]wenty-nine people . . . charged, all facing various

degrees of . . . charges with . . . offers . . . extended in every single case[,]" the State had "been trying to get the matter resolved." The judge was satisfied that the State had "been actively litigating the case" and pointed out that "[t]he investigation has been ongoing."

Next, considering defendant's assertion of his right, the judge found that, while "[t]here's no requirement that a defendant demand to be indicted[,]" defendant did not contribute "to the delay here" and this was not "a factor that [could] be used against the defendant in any way." However, since the State did not use purposeful delay tactics, the judge considered this a "neutral" factor.

Finally, as to prejudice to defendant, the judge explained:

[T]his is the most important factor. . . .

[Defendant] is incarcerated, has been incarcerated for over a year . . . and that is not insignificant.

Under Barker, the courts were advised to consider whether there was oppressive pre-trial incarceration, anxiety and concern over the outcome, and whether his ability to defend was impaired.

Certainly, he has been in jail. Bail was set. It was high bail. He has had the assistance of counsel from the very beginning. He has not suffered a loss of an opportunity . . . to defend the case.

6

[W]hile he's indicated that he has some impairments on his ability to do legal research, he has had the ability to review evidence. And while it may not be the most accessible library, he does have some accessibility to the library at the jail. And he does have an ongoing ability to consult with his counsel. And I do not find that . . . the prejudice in his case is overwhelming.

The judge resolved:

[S]o in conclusion, . . . I do not think that [defendant] [has] been able to prevail. There's been no indication by [defendant] that . . . [his] ability to proceed to defend the case has been compromised by the loss of witnesses, faded memories.

I know it's been suggested, but no one's really . . . given me anything to . . . make a finding with regard to that.

It is a complex case, which everyone acknowledges. I also note for the record that, as I previously indicated, . . . I don't expect the delay past indictment to be extensive. They're going to the [g]rand [j]ury, I believe, this week to seek indictments. And the case will be proceeding on a faster track after that.

Approximately one month later, on July 2, 2013, Indictment No. 13-06-0797 was returned charging defendant and fourteen others in a seventy-seven count indictment. The indictment incorporated the offenses previously contained in the complaints. On appeal, defendant raises a single argument for our consideration:

A-2760-14T4

POINT I

THE TRIAL JUDGE ERRED IN DENYING [DEFENDANT'S] MOTION FOR DISMISSAL PURSUANT TO R. 3:25-3 BECAUSE THERE WAS AN UNREASONABLE DELAY IN PRESENTING THIS MATTER TO THE GRAND JURY.

Defendant argues that the thirteen months he remained in jail between his arrest and indictment prejudiced his ability to prepare a defense because, although he was represented by counsel, he was "unable to fully investigate his case and file appropriate motions[,]" and had "limited access" to the law library and difficulty contacting "family members." In addition, defendant argues that the judge erred in finding "that the State's delay in moving the case was not purposeful" because "[t]he State had no compelling reason to explain the unreasonable delay of one year." We disagree and affirm substantially for the reasons set forth by Judge Gibbons Whipple in her well-reasoned oral opinion. We add only the following brief comments.

Rule 3:25-3 permits a defendant to seek dismissal of an indictment, and further permits the court to do so sua sponte, when "there is an unreasonable delay in presenting the charge to a grand jury[.]" Determination of what is an "unreasonable" delay rests upon "an ad hoc balancing test" that evaluates the idiosyncratic facts of each case. State v. Szima, 70 N.J. 196,

201, <u>cert. denied</u>, 429 <u>U.S.</u> 896, 97 <u>S. Ct.</u> 259, 50 <u>L. Ed.</u> 2d 180 (1976).

In <u>State v. Cahill</u>, 213 <u>N.J.</u> 253, 258 (2013), the Court reiterated "that the four-factor balancing analysis of [<u>Barker</u>, <u>supra</u>], remains the governing standard to evaluate claims of a denial of the federal and state constitutional right to a speedy trial . . . ." Those four factors are: "length of the delay, reason for the delay, assertion of the right by a defendant, and prejudice to the defendant." <u>Id.</u> at 264 (citing <u>Barker</u>, <u>supra</u>, 407 <u>U.S.</u> at 530, 92 <u>S. Ct.</u> at 2192, 33 <u>L. Ed.</u> 2d at 117).

In certain cases, the length of the delay may cross the threshold between ordinary and "presumptively prejudicial" and trigger the need to engage in the balancing test. <u>Barker</u>, <u>supra</u>, 407 <u>U.S.</u> at 530-31, 92 <u>S. Ct.</u> at 2192, 33 <u>L. Ed.</u> 2d at 117. Such an inquiry is "dependent upon the peculiar circumstances of the case." <u>Ibid.</u> Thus, a longer delay may be tolerated where it is the result of "the complexity of the subject matter of the case" and not the prosecution's attempt to impair the defendant's right to defend. <u>State v. Gaikwad</u>, 349 <u>N.J. Super.</u> 62, 88 (App. Div. 2002) (holding that a seventeen-month delay due to the complexity of the case was not unreasonable); <u>see also</u> <u>Barker</u>, <u>supra</u>, 407 <u>U.S.</u> at 531, 92 <u>S. Ct.</u> at 2192, 33 <u>L. Ed.</u> 2d at 117 (noting, for example, that "the delay that can be tolerated for an ordinary

street crime is considerably less than for a serious, complex conspiracy charge").

With regard to the second factor, "different weights should be assigned to different reasons" for the State's delay. Barker, supra, 407 U.S. at 531, 92 S. Ct. at 2192, 33 L. Ed. 2d at 117. Deliberate delays intended to prejudice the defendant will weigh heavily against the State. Ibid. Neutral delays, such as scheduling, are considered against the State but carry less weight than intentional delays. Ibid.

The third factor considers if and when the defendant asserted his right to a speedy trial. A defendant is under no obligation to do so, as it is the State's "responsibility to prosecute cases in a timely fashion." Cahill, supra, 213 N.J. at 266 (citation omitted). However, in assessing the prejudice to defendant caused by the delay, the court may consider whether he asserted his right because "[t]he defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." Barker, supra, 407 U.S. at 531-32, 92 S. Ct. at 2192-93, 33 L. Ed. 2d at 117-18.

The fourth and final factor, "prejudice[,] was said to include oppressive pretrial incarceration, anxiety and concern of the accused and impairment of the defense. Of these, impairment of

the defense was considered the most serious since it went to the question of fundamental fairness."  Szima, supra, 70 N.J. at 201.

"None of the Barker factors is determinative, and the absence of one or some of the factors is not conclusive of the ultimate determination of whether the right has been violated."  Cahill, supra, 213 N.J. at 267 (citation omitted).  "[T]he factors are interrelated, and each must be considered in light of the relevant circumstances of each particular case." State v. Tsetsekas, 411 N.J. Super. 1, 10 (App. Div. 2009) (citation omitted).  "[W]e reverse only if the court's determination is clearly erroneous." Ibid. (citation omitted).

Applying those principles, we discern no error in the judge's decision.  The obvious complexity of the case is manifest from a perusal of the indictment itself.  This fact, together with the absence of actual prejudice to defendant, undercuts defendant's argument on appeal.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11

A-2760-14T4