**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2292-17T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JONATHAN M. CAMPBELL,

     Defendant-Appellant.

_____

        Submitted January 8, 2019 – Decided May 8, 2019

        Before Judges Vernoia and Moynihan.

        On appeal from Superior Court of New Jersey, Law Division, Morris County, Municipal Appeal No. 17-018.

        Ostroff Injury Law, PC, attorneys for appellant (James T. DiMarco, of counsel and on the briefs).

        Fredric M. Knapp, Morris County Prosecutor, attorney for respondent (Elizabeth D. Beaman, Assistant Prosecutor, on the brief).

PER CURIAM

Following his conditional guilty plea to driving while intoxicated, N.J.S.A. 39:4-50, and failure to report an accident, N.J.S.A. 39:4-130, defendant Jonathan Campbell appealed to the Law Division from the municipal court's denial of his motion to dismiss based on speedy trial grounds. The Law Division judge concluded defendant's speedy trial rights were not violated, denied his motion to dismiss and entered an order imposing the sentence called for in the plea agreement. On appeal, defendant argues:

> DEFENDANT WAS DENIED THE RIGHT TO A
> SPEEDY TRIAL AND THE TRIAL COURT ERRED
> IN NOT HOLDING SO.

We agree and reverse.

The Law Division judge, after she and her court clerk diligently combed through the Superior Court file and PromisGavel entries, took judicial notice of those records, N.J.R.E. 201(b), in order to construct a timeline of events because counsel for both parties "candidly admitted that they were unaware of some of the reasons for delays in this matter between certain scheduled court dates." In that neither party contends the timeline sequence found by the judge could not have reasonably been reached on sufficient, credible evidence in the record,

A-2292-17T1

State v. Stas, 212 N.J. 37, 49 (2012), we glean some pertinent facts from the judge's findings.[1]

Defendant was arrested on April 27, 2012 for the two motor vehicle violations to which he pleaded guilty and four other motor vehicle infractions which were later dismissed as part of the plea agreement. The charges stemmed from the State's allegation that defendant was driving with a blood alcohol content of .21 percent – in excess of the legal limit of .08 percent, N.J.S.A. 39:4-50(a) – crashed into a median injuring a passenger in his vehicle, and left the scene of the accident. The matter was referred to the Morris County Prosecutor's Office whereafter defendant was indicted for fourth-degree assault by auto, N.J.S.A. 2C:12-1(c)(2).[2]

Defendant was arraigned on November 13, 2012. Amid a series of status conferences that commenced on January 28, 2013, defendant filed a motion to suppress on February 14, 2013 and, on March 25, 2013, the State sought a

_____

[1] We note that, while the findings we cite are, except as noted, undisputed, there are circumstances that were not considered by the Law Division judge which are pertinent to evaluating the speedy trial decision. The facts here set forth do not include those circumstances, established in the record, which we will address in our analysis.

[2] It is not clear from the record the date on which the indictment was handed down. The copy of the indictment provided indicates the matter was presented on August 28, 2012.

A-2292-17T1

hearing pursuant to Rule 104(c) in order to present defendant's statement as evidence in its case-in-chief. N.J.R.E. 104(c). Hearings on the motions were carried at defendant's request from June 2013 to July 2013; and were adjourned on the rescheduled date at the State's request. Although a status conference was rescheduled from September 25, 2013 to November 19, 2013, the record is unclear why the motions were not rescheduled until March 26, 2014. Because defendant's counsel was in trial on another matter on that date, the motions were heard on April 24 and May 7, 2014; the judge issued an order resolving them on May 30, 2014. A trial date of October 6, 2014 was set at a July 30 pretrial conference, at which defendant indicated his intention to file a motion to dismiss on speedy trial grounds; that motion was not filed until December 31, 2014. At a November 3, 2014 pretrial conference, the trial was rescheduled for January 19, 2015.[3] Defendant's motion to dismiss was denied on January 20. Trial was rescheduled for February 17, 2015.

Setting aside for the moment what caused his action, on the February trial date, defendant's counsel said he needed a two-month adjournment to seek approval from the Office of the Public Defender for funds to hire an expert. He

---

[3] The Law Division judge found the adjourned trial date was January 20, 2015. The November 3, 2014 order provides the January 19 date.

A-2292-17T1

also said he intended to file a motion to dismiss the indictment and for an order compelling defendant's admission to the pre-trial intervention program sans the requirement of a guilty plea to driving while intoxicated. The motions were filed on March 17, 2015. Following a June 8, 2015 court hearing at which defense counsel failed to appear, the State filed its response on June 12. On that same date, defense counsel informed the court of his desire that the next status conference be adjourned to September 2015, to allow him to obtain an expert.

Both of defendant's motions were denied on September 3, 2015. At another pretrial conference on October 21, 2015, trial was scheduled for January 11, 2016. The State moved to dismiss the indicted charge on December 22, 2015 and the motor vehicle violations were remanded to municipal court on January 13, 2016.

Defendant appeared at the first proceeding in municipal court on February 8, 2016, at which his request for the appointment of a public defender was approved. On June 13, 2016, the matter was scheduled for a special session on August 8; that date was adjourned to September 19, 2016 by the court. On the adjourned date, defense counsel requested an adjournment "to obtain a quote from [an] expert." Trial was scheduled for February 13, 2017.

A-2292-17T1

The record contains sparse information related to defendant's municipal court motion to dismiss on speedy trial grounds. Defense counsel represented and the municipal court judge confirmed that the motion was not grounded on any post-remand delay; defendant argued his speedy trial rights were violated only while the matter was pending in Superior Court. The municipal court judge began to give an oral decision on February 13, 2017 but, because of a power outage, was unable to complete placing the decision to deny the motion on the record until March 20. The trial was then rescheduled for May 15, 2017, on which date defendant entered a conditional plea of guilty.

In our review of the decision on a municipal appeal, "[w]e review the action of the Law Division, not the municipal court." State v. Robertson, 438 N.J. Super. 47, 64 (App. Div. 2014). Our review of the Law Division judge's denial of defendant's motion to dismiss the remanded charges is de novo because the challenged decision turns exclusively on issues of law. Stas, 212 N.J. at 49. We will, however, reverse the denial of a speedy trial motion only where it is "clearly erroneous." State v. Tsetsekas, 411 N.J. Super. 1, 10 (App. Div. 2009).

The four-part test to determine when a violation of a defendant's speedy-trial rights contravenes due process – announced in Barker v. Wingo, 407 U.S. 514, 530-33 (1972), and adopted by our Supreme Court in State v. Szima, 70

N.J. 196, 200-01 (1976) – requires "[c]ourts [to] consider and balance the '[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.'" Tsetsekas, 411 N.J. Super. at 8 (third alteration in original) (quoting Barker, 407 U.S. at 530).

The Law Division judge aptly found lengthy the delay from defendant's April 2012 arrest until the entry of his guilty plea in May 2017. The judge, however, misapprehended that defendant's argument did not include the period of time following the Law Division's remand in January 2016. Further, the judge concluded that the length of the delay made it "appropriate to analyze the remaining Barker factors." Although our Supreme Court has held "once the delay exceeds one year, it is appropriate to engage in the analysis of the remaining Barker factors," State v. Cahill, 213 N.J. 253, 265-66 (2013), the judge was required to weigh the length of the delay. See Tsetsekas, 411 N.J. Super. at 10 (holding "[n]o single factor is a necessary or sufficient condition to the finding of a deprivation of the right to a speedy trial"); see also Cahill, 213 N.J. at 267 ("All factors are related, thereby requiring a balancing of all applicable factors while recognizing the fundamental right bestowed on a defendant to a speedy trial.").

A-2292-17T1

The lapse of almost forty-four months until the indictable charge was dismissed was inordinately long. The fourth-degree assault by auto charge was not complex. The State's reason for dismissing the charge is not set forth in the record before us. Based on the record presented, however, we discern no reason it should have taken almost four years to reach the conclusion that the charge should be dismissed. There is no evidence a late defense submission factored in the State's decision; indeed, as the Law Division judge repeatedly recognized, defendant never submitted an expert report. The long lapse until dismissal should have been weighed heavily against the State.

"Barker's second prong examines the length of a delay in light of the culpability of the parties." Tsetsekas, 411 N.J. Super. at 12 (citing Barker, 407 U.S. at 529). "[D]ifferent weights should be assigned to different reasons" proffered to justify a delay. Barker, 407 U.S. at 531. Purposeful delay tactics weigh heavily against the State. Cahill, 213 N.J. at 266 (citing Barker, 407 U.S. at 531). "A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." Barker, 407 U.S. at 531; see also Cahill, 253 N.J. at 266. "[A] valid reason, such as a missing witness, should serve to justify

appropriate delay." Barker, 407 U.S. at 531. And, "[d]elay caused or requested by the defendant is not considered to weigh in favor of finding a speedy trial violation." State v. Farrell, 320 N.J. Super. 425, 446 (App. Div. 1999).

The Law Division judge heavily weighed delays she attributed to defendant's attempt to secure an expert. The judge, however, did not consider that the need for the expert was prompted by the State's delivery of calibration records to defendant on the February 2015 trial date.

Those calibration records were required to be produced in discovery by the State as one of the twelve foundation documents set forth in the Supreme Court's order governing the prosecution of all matters arising pursuant to N.J.S.A. 39:4-50. State v. Chun, 194 N.J. 54, 153 (2008). Those records were not, as the State contends, "newly-discovered evidence." They should have been turned over with the initial discovery package. We note the Law Division judge handling the case in April 2013 entered a status conference order that provided all discovery was completed. If the calibration records had been timely delivered, it was likely that the February 2015 trial would not have been adjourned because defendant would have had ample opportunity to seek and obtain permission from the Office of the Public Defender to hire an expert and to, thereafter, submit the discovery to that expert and obtain a report. Instead,

A-2292-17T1

on the trial date defense counsel sought two months just to obtain approval to hire an expert.

The Law Division judge found defendant "sought a significant postponement to secure an expert." That delay should not have been attributed to defendant. "In representing the State, the prosecutor and the police must accept responsibility for ensuring a defendant's right to a speedy disposition of the charges is respected."[4] Tsetsekas, 411 N.J. Super. at 13. "This requires expediting all necessary discovery . . . ." Ibid. The State precipitated that delay by failing to comply with the Court's order in Chun. A judge considering a speedy trial assertion "must account for the provisions of [that] order." Cahill, 213 N.J. at 276.

We further note the Law Division judge found "defendant was still seeking time to secure an expert report some two years later, in March[] 2017, well after the indictable offense had been dismissed and the remaining charges had been remanded to municipal court." The judge previously observed:

> It is unclear why defendant waited until September 2016 to tell [the court] he was seeking a quote from an expert, in light of predecessor counsel's representation

---

[4] "If a case is referred to the prosecutor following arrest by a police officer as the initial process, or on a complaint by a police officer, see R. 3:3-1; R. 3:4-1, local law enforcement is part of the prosecutor's office for discovery purposes." State v. W.B., 205 N.J. 588, 608 (2011).

> to the court in June[] 2015, that he wanted an adjournment to obtain his expert's report (versus a quote). It is also unclear why, as late as March[] 2017, after defendant had filed his third [m]otion to [d]ismiss, he still did not have his expert's report.

The judge mentioned on several occasions that defendant had failed to obtain an expert report after the remand.

Not only did the judge's analysis consider matters outside the scope of defendant's pre-remand speedy trial argument, it failed to recognize that defendant, after remand, was represented by a different public defender – appointed by the municipality, not the State – who had to obtain discovery and go through a similar but separate, multi-step process to obtain an expert's report, as did defendant's public defender in Superior Court.

The judge also faulted defendant for failing to file a motion for relief from the joinder of the assault and motor vehicle charges. The fact that defendant did not file a severance motion had no bearing on the speedy trial analysis. First, a defendant has no obligation to press for the resolution of his case. Cahill, 213 N.J. at 266. Because that tenet includes asserting a right to a speedy trial, ibid., we conclude it also pertains to filing motions to sever a driving-while-intoxicated charge from an assault by auto.

Further, the <u>Cahill</u> Court recognized that when a defendant is charged with both driving while intoxicated and an indictable offense, "prosecution of the driving-while-intoxicated charge prior to resolution of the indictable offense[] raise[s] double jeopardy concerns and the possible dismissal of the more serious indictable charges."  <u>Id.</u> at 273; <u>see also</u> <u>State v. Hand</u>, 416 N.J. Super. 622 (App. Div. 2010) (barring driving-while-intoxicated prosecution following guilty plea to fourth-degree creating risk of widespread injury or death).  The Court recognized the sagacity of Directive #04-11 which was released by the Administrative Office of the Courts in 2011, <u>Cahill</u>, 213 N.J. at 271-72; the Directive provides:

> Unless there is some compelling reason otherwise, a Superior Court judge should dispose of all parts of a case before the court, including any associated municipal court matters.  This procedure increases the overall efficiency of the court system.  It also avoids having the defendant appear for a second matter that arose out of the same event, thus eliminating potential double jeopardy issues.  <u>See, e.g.</u>, <u>Hand</u>, 416 N.J. Super. 622.  Indeed, when an indictable offense goes to trial, the court is required by <u>Rule</u> 3:15-3 to join any pending non-indictable complaint that is based on the same conduct or arising from the same episode, unless the defendant or the State would be prejudiced by doing so.  <u>See also</u> <u>R.</u> 3:1-6(a).
>
> [Administrative Directive #04-11 (July 12, 2011).]

The Court anticipated that the Directive would limit the remand to municipal court of charges, such as driving while intoxicated, to rare instances. Cahill, 213 N.J. at 276.

It took four months from defendant's April 2012 arrest until his indictment for assault. Just under three months later he was arraigned and the initial status conference was over two months thereafter in late-January 2013. Defendant filed a motion to suppress on Valentine's Day 2013. It was scheduled for June 13, 2013 along with the State's Rule 104(c) application, N.J.R.E. 104(c), but was adjourned for one month at defendant's request. The State requested an adjournment of the July 2013 date and over eight months elapsed before the motions were calendared in March 2014. Because defendant's counsel was in trial, the motions were adjourned for approximately one month. Hearings were held on April 24 and May 7, 2014; the judge's dispositive order was filed on May 30.

Thus, in the twenty-five months after defendant's arrest, less than two months delay can be attributed to adjournments requested by defendant. The reason for the long gap between the State's July 2013 adjournment request and the next scheduled motion hearing is unexplained; we note two status conferences were scheduled in September and November 2013.

A-2292-17T1

Under similar circumstances, the <u>Cahill</u> Court held that a "lengthy and unexplained" sixteen-month delay between a remand to municipal court following a defendant's sentencing for assault by auto and the setting of a municipal court trial date for the remanded driving-while-intoxicated charge "weigh[ed] heavily against the State" where "[t]he State offer[ed] no justification for the delay." 213 N.J. at 273-74.

It took two months after the motions were decided in May 2014 to set a trial date for October 6, 2014. The pretrial memorandum memorializing that trial date, entered on July 30, 2014, indicates defendant's intention to file a speedy trial motion to dismiss. The October trial date unaccountably passed, a pretrial conference occurred almost a month later on November 3, and defendant finally filed his motion to dismiss on December 31, 2014. The period between the October 6 trial date and the February 2015 trial date, scheduled after defendant's motion was decided on January 5, 2015, is attributed to defendant; had the motion be timely filed after the July 30 pretrial conference, it could have been heard by or on the October 6 trial date.

We determine the reasons for the delay, in balance, weigh more against the State, considering the delay attributable to defendant – amounting to less than six months – is exceeded by that attributable to the State: in July 2013 the

14

State requested an adjournment of the Rule 104 and suppression motions that were not rescheduled until March 2014, and its failure to turn over the calibration reports until the February 2015 trial date.

Defendant's "assertion of [his] right to a speedy trial is measured heavily in the speedy trial analysis." Cahill, 213 N.J. at 274.  Because we consider "the frequency and force of the [defendant's] objections" in assessing whether the defendant properly invoked the right, Barker, 407 U.S. at 529, we determine this factor inures to defendant's benefit.  Defendant filed motions to dismiss on speedy trial grounds twice in the Superior Court:  on December 31, 2014 and March 17, 2015.[5]  The weight given to the factor is somewhat buffered by defendant's delay in filing the December 2014 motion.  We do not agree, however, with the Law Division's ruling that limited weight should be accorded this factor because defendant was "not prepared to go to trial without his expert and only advised the court of his need for one in February[] 2015."  Again, the State's failure to turn over the calibration records caused that delay.

The fourth prong of the Barker test considers the prejudice "in the context of the interests the right is designed to protect.  Those interests include

---

[5]  Defendant also asserts he filed another such motion on February 13, 2017 in the municipal court but his argument is limited to delays prior to the remand. As such, we will not consider that assertion of his speedy trial rights.

A-2292-17T1

prevention of oppressive incarceration, minimization of anxiety attributable to unresolved charges, and limitation of the possibility of impairment of the defense." Cahill, 213 N.J. at 266 (citation omitted).  Although, as here, the delay may not prejudice a

> defendant's liberty interest or his ability to defend on the merits[,] . . . significant prejudice may . . . arise when the delay causes the loss of employment or other opportunities, humiliation, the anxiety in awaiting disposition of the pending charges . . . and the "other costs and inconveniences far in excess of what would have been reasonable under more acceptable circumstances."
>
> [Tsetsekas, 411 N.J. Super. at 13 (quoting Farrell, 320 N.J. Super. at 452).]

Defendant reprises his argument to the Law Division that the delay "weighed heavily" upon him, "affecting his work, emotional state and custody arrangement with his son."  The Law Division judge agreed with the State that defendant "advanced no proofs to support his claim of prejudice or anxiety." "[P]roof of actual trial prejudice [however] is not 'a necessary condition precedent to the vindication of the speedy trial guarantee.'"  Tsetsekas, 411 N.J. Super. at 13-14 (quoting State v. Merlino, 153 N.J. Super. 12, 15-16 (App. Div. 1977)).  The Court in Cahill observed:

> A speedy trial violation can be established without evidence of prejudice.  Farrell, 320 N.J. Super. at 446.

16

> Some authorities even suggest that every unresolved case carries with it some measure of anxiety. See, e.g., Szima, 70 N.J. at 206 ("[T]he defendant automatically endures 'restraints on his liberty' and lives 'under a cloud of anxiety, suspicion, and often hostility.'" (quoting Barker, 407 U.S. at 533)); Hanrahan v. United States, 348 F.2d 363, 366-67 (D.C. Cir. 1965) ("Speedy trial provisions seek . . . to minimize the anxiety and attendant evils which are invariably visited upon one under public accusation but not tried.").
>
> [213 N.J. at 274-75.]

Defendant does not present any evidence establishing he suffered a particular prejudice as a result of the delays prior to remand. But, prejudice is not required to establish a speedy trial violation, id. at 274, and "[w]e must assume that any person who has had limited involvement with the criminal justice system . . . experience[s] some measure of anxiety by the existence of a pending and long-unresolved charge[,] . . . particularly . . . when one of the sanctions, a license suspension, would have a dramatic impact on defendant's daily activities and ability to earn a living," id. at 275. Although we consider the absence of evidence showing actual prejudice in our analysis of this factor, we find the lengthy delay caused some prejudice and disagree with the Law Division judge that this "factor does not weigh in favor of a speedy trial violation." We deem it entitled to at least some weight in defendant's favor.

Balancing the four factors and the specific facts of this case, we conclude the State violated defendant's right to a speedy trial. Accordingly, we are constrained to vacate defendant's plea to driving while intoxicated, dismiss that charge, and remand this matter to the Law Division for entry of an order of dismissal.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION