**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2050-20

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ZENG L. CHEN,

    Defendant-Appellant.

_____

Submitted January 20, 2022 – Decided February 1, 2022

Before Judges Hoffman and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 10-10-1964.

Joseph E. Krakora, Public Defender, attorney for appellant (Steven M. Gilson, Designated Counsel, on the brief).

Lori Linskey, Acting Monmouth County Prosecutor, attorney for respondent (Lisa Sarnoff Gochman, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Zeng L. Chen appeals from the July 30, 2020 Law Division order denying his petition for post-conviction relief (PCR) without an evidentiary hearing.

In 2015, a jury found defendant guilty of two counts of first-degree felony murder, and single counts of first-degree murder, first-degree armed robbery, second-degree burglary, and third-degree possession of a weapon (knife) for an unlawful purpose. The trial court imposed a sentence of life imprisonment with an eighty-five percent parole bar on the first-degree murder conviction.[1] In 2018, we affirmed defendant's convictions and sentences, State v. Chen, No. A-4929-14 (N.J. Super Ct. App. Div. April 12, 2018), and our Supreme Court denied certification. State v. Chen, 235 N.J. 449 (2018).

Approximately four-and-a-half years elapsed between defendant's arrest and his trial. Citing this delay, on December 11, 2018, defendant filed the PCR petition under review, asserting his trial counsel rendered ineffective assistance

---

[1] In addition, after appropriate mergers, the trial court sentenced defendant to a concurrent thirty-year term with a thirty-year parole bar on the first-degree felony murder conviction and a concurrent fifteen-year term with an eighty-five percent parole bar on the first-degree armed robbery conviction.

2

by failing to move for dismissal on constitutional speedy trial grounds.[2] The PCR judge denied relief, ruling that defendant's petition was procedurally barred because the speedy trial issue could have been raised on direct appeal.

On appeal, defendant challenges the PCR court's finding that his petition was procedurally barred pursuant to Rule 3:22-4. Moreover, defendant maintains he established a prima facie case of ineffective assistance of counsel based on speedy trial grounds, and that we should therefore remand for an evidentiary hearing. After reviewing the record in light of applicable legal standards, we vacate and remand for the PCR court to make specific findings of fact and law under the Barker[3] test for speedy trial violations in the context of the two-pronged Strickland[4] test for PCR.

It appears that much of the delay in this case was attributable to 1) defendant's severance motion to be tried separately from his co-defendant; 2) pretrial motions to dismiss the indictment and suppress defendant's statement; 3) reassignment of the matter to four different trial judges; and 4) the serious

---

[2] This case predates the Criminal Justice Reform Act, N.J.S.A. 2A:162-15 to – 26, which took effect on January 1, 2017. State v. Robinson, 229 N.J. 44, 55 (2017).

[3] Barker v. Wingo, 407 U.S. 514, 515 (1972)

[4] Strickland v. Washington, 466 U.S. 668, 687 (1984)

A-2050-20

nature of the charges, which required experts in forensic DNA analysis and biological stain identification. However, the PCR judge did not make specific findings with respect to the four factors set forth in <u>Barker</u>, but instead relied on the procedural bar established by <u>Rule</u> 3:22-4. In light of our general policy against entertaining ineffective assistance of counsel claims on direct appeal, <u>State v. Preciose</u>, 129 N.J. 451, 459-60 (1992),[5] and our preference for hearing such claims in post-conviction proceedings, <u>ibid.</u>, we find it necessary to vacate the order under review and remand this matter to the Law Division to undertake the fact-sensitive analysis required by <u>Barker</u>.

## I.

We assume the reader's familiarity with the facts and procedural history set forth in our decision denying defendant's direct appeal, <u>State v. Chen</u>, (slip op. at 2-12). We summarize the most significant facts and events to provide context for defendant's speedy trial claim.

---

[5] "Our courts have expressed a general policy against entertaining ineffective-assistance-of-counsel claims on direct appeal because such claims involve allegations and evidence that lie outside the trial record." <u>Preciose</u>, 129 N.J. at 460. Consequently, "[i]neffective-assistance-of-counsel claims are particularly suited for post-conviction review because they often cannot reasonably be raised in a prior proceeding." <u>Ibid.</u> (citing <u>R.</u> 3:22-4).

4

On June 16, 2010, defendant and his co-defendant, Dong B. Lin, broke into the home of a former employer, who lived on South Street in Freehold, intending to steal money and other valuables. The victims, Yun Chen, and her brother, Yao Chen, were unexpectedly at home that afternoon. Yao came out of his first-floor bedroom, heading toward the kitchen, when he encountered the intruders. Lin had a white-handled knife in his hand and defendant had brass knuckles. Lin ordered Yao to "be quiet" and to return to his room. Yao complied.

Lin gave the knife to defendant, who threatened Yao, while Lin went to locate a telephone cord, which they used to tie Yao's hands and feet to the bedframe. Wielding a second knife that Lin retrieved from the kitchen, defendant threatened Yao to keep him quiet while Lin went upstairs with the white-handled knife to search for valuables. Using the white-handled knife, Lin attacked Yun through her comforter, as she lay in her bed, stabbing her seventy-nine times in the neck, chest, torso and abdomen, and through her arms and wrists.

When Yao heard his sister screaming upstairs, he started screaming and struggled to get free. Defendant held Yao down and repeatedly punched him in the head with the brass knuckles. Defendant also stuffed cloth in Yao's mouth

5

to stifle his screams. Since defendant saw Lin take the white-handled knife upstairs with him, when he heard Yun screaming, he was "pretty sure" Lin was killing her.

Defendant called Lin to help him with Yao, who was still screaming and struggling. Lin came downstairs and stabbed Yao with the white-handled knife; after that knife broke, Lin grabbed the kitchen knife and stabbed Yao seventy-four times in the face, neck, shoulder, chest, abdomen, and buttocks.

When Yao stopped making noise, defendant and Lin quickly searched the house for valuables. They placed computers, a cell phone, camera, watch, electronics, and a box of cigarettes in a suitcase and left with it. Yao did not die in the house; despite his extensive wounds, Yao made his way out the front door of the home, down the porch steps, and onto South Street, where he collapsed.

At that time, off-duty Rahway police officer Richard Long was driving on South Street, when he observed an Asian male with "multiple wounds to his head, neck, [and] abdomen . . . stumbling" onto the roadway, with his hands "bound in front of him by a cord." Long called 9-1-1 and summoned an ambulance and the police. First responders transported Yao to Jersey Shore University Medical Center, where he died within the hour.

6

Based on timely reports and information provided by two neighbors of the victims, the police were able to locate and arrest defendant and Lin, who were apparently walking toward the bus station.[6] After their arrest, defendant and Lin were photographed and their clothing and personal effects were collected as evidence. Defendant had a cut on his left middle knuckle and red staining on his hands and jeans. After determining that defendant and Lin spoke Chinese and not English, the police arranged for Officer Robert Wei of the Piscataway Police Department to provide translation services. Defendant was advised of his Miranda[7] rights, voluntarily waived them, and was interviewed. Defendant described the break-in and the events that followed. Defendant denied knowing Lin was going to kill the victims and said that he was "shocked" when Lin did; instead, he thought they were going to just "threaten" them. Defendant admitted he punched Yao and used the kitchen knife to threaten him when he was screaming; however, he insisted that he "did not use the knife to cut anybody."

In October 2010, a Monmouth County Grand jury returned an eight-count indictment charging defendant and Lin with first-degree knowing/purposeful

---

[6] When the police arrested Lin, they recovered from him a New Jersey Transit Bus receipt for two one-way adult tickets, issued on June 16, 2010, at 1:46 p.m.

[7] Miranda v. Arizona, 384 U.S. 436 (1966).

A-2050-20

murder and six related charges. In April 2012, defendant filed a severance motion, seeking a separate trial from Lin. In June 2012, the trial court denied defendant's motion to dismiss the indictment on the ground of insufficient evidence to support the murder charges. In September 2012, the court granted defendant's motion to sever.

In December 2013, defendant filed a motion to suppress his electronically recorded statement. On April 10, 16, and 29, 2014, the trial court conducted a testimonial hearing, ultimately denying defendant's suppression motion. The case was reassigned to different judges multiple times. In May 2014, the case was reassigned to the fourth trial judge.

On January 8, 2014, Lin pled guilty to the knowing/purposeful murders and felony murders of Yao Chen and Yun Chen. In exchange for Lin's guilty pleas, the State agreed to recommend a sentence of life imprisonment with the possibility of parole. A condition of his plea agreement required Lin to testify truthfully at defendant's trial. Lin's testimony at defendant's trial was largely consistent with defendant's interview with the police.

After the trial court sentenced defendant, he filed a direct appeal, raising the following issues:

POINT I

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR ACQUITTAL (RAISED BELOW), AND THE TRIAL COURT'S JURY CHARGES WERE INCORRECT AND INCOMPLETE (PLAIN ERROR), WARRANTING VACATION OF DEFENDANT'S CONVICTIONS FOR MURDER, ARMED BURGLARY AND ROBBERY, FELONY MURDER, AND POSSESSION OF A WEAPON FOR AN UNLAWFUL PURPOSE.

POINT II

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS STATEMENTS MADE TO POLICE.

POINT III

THE TRIAL COURT ERRED IN PRECLUDING DEFENDANT FROM OFFERING EXPERT TESTIMONY IN SUPPORT OF HIS MOTION TO SUPPRESS.

POINT IV

DEFENDANT'S SENTENCE IS IMPROPER AND EXCESSIVE.

As noted, we affirmed defendant's convictions and sentences in April 2018. Eight months later, in December 2018, defendant filed the petition under review; in September 2019, defendant filed an amended PCR petition asserting the following grounds for relief:

POINT I

THE DEFENDANT'S PETITION IS NOT PROCEDURALLY BARRED BECAUSE THE ISSUES RAISED THEREIN WERE NOT EITHER PREVIOUSLY RAISED ON APPEAL, OR COULD NOT HAVE BEEN RAISED ON DIRECT APPEAL.

A. THE PETITION RAISES CLAIMS THAT [] DEFENSE COUNSEL COULD NOT HAVE REASONABLY RAISED IN PRIOR PROCEEDINGS. [R. 3:22-4(A)]

B.THE PETITION PRESENTS EXCEPTIONAL CIRCUMSTANCES RESULTING IN A "FUNDAMENTAL INJUSTICE." [R. 3:22-4(B)]

C. THE PETITION DEMONSTRATES AN INFRINGEMENT OF THE DEFENDANT'S CONSTITUTIONAL RIGHTS. [R. 3:22-4(A)]

POINT TWO

THE DEFENDANT IS ENTITLED TO A PLENARY HEARING TO ESTABLISH HIS CLAIM OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL.

POINT THREE

THE DEFENDANT'S SIXTH AMENDMENT RIGHTS WERE VIOLATED BECAUSE HE WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL.

POINT FOUR

TRIAL COUNSEL WAS INEFFECTIVE BECAUSE HE FAILED TO FILE A MOTION TO DISMISS BASED ON SPEEDY TRIAL VIOLATIONS.

POINT FIVE

THE TRIAL COURT COMMITTED A REVERSIBLE HEARING {SIC} BY NOT GIVING THE DEFENDANT A HEARING WHEN HE WROTE THE COURT TO HAVE NEW COUNSEL APPOINTED.

POINT SIX

THE TRIAL COURT COMMITTED AN ERROR BY NOT ADVISING THE DEFENDANT THAT HE COULD REPRESENT HIMSELF.

POINT SEVEN

TRIAL COUNSEL WAS INEFFECTIVE BECAUSE HE DID NOT REQUEST A SUPPLEMENTAL JURY CHARGE.

POINT EIGHT

TRIAL COUNSEL WAS INEFFECTIVE IN THE PREPARATION OF THE CASE, AND IN THE SELECTION OF AN EXPERT WITNESS.

POINT NINE

RECENT SUPREME COURT LAW MANDATES THAT A DEFENDANT IS CONSTITUTIONALLY ENTITLED TO ADEQUATE EXPERT WITNESSES.

POINT TEN

THE DEFENDANT SUBMITS THAT THERE IS OVERWHELMING NEW JERSEY JURISPRUDENCE TO SUPPORT HIS LEGAL GROUNDS THAT HE SHOULD BE RESENTENCED

A-2050-20

BECAUSE HE WAS NEVER ADVISED AS {SIC} AND EARLY PLEA OFFER.

POINT ELEVEN

THE DEFENDANT SUFFERED PREJUDICE BECAUSE HAD HE BEEN INFORMED OF THE PLEA OFFER THE OUTCOME WOULD HAVE BEEN DIFFERENT; HE WOULD HAVE RECEIVED A MUCH SHORTER SENTENCE.

In July 2020, after hearing oral argument, the PCR court denied defendant's petition, finding that it was procedurally barred, pursuant to Rule 3:22-4.

This appeal followed, with defendant raising the following arguments:

POINT I

DEFENDANT'S CLAIM THAT TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO MOVE FOR DISMISSAL OF THE INDICTMENT ON SPEEDY TRIAL GROUNDS SHOULD NOT HAVE BEEN PROCEDURALLY BARRED.

POINT II

THIS MATTER MUST BE REMANDED FOR AN EVIDENTIARY HEARING BECAUSE DEFENDANT ESTABLISHED A PRIMA FACIE CASE OF TRIAL COUNSEL'S INEFFECTIVENESS FOR FAILING TO MOVE FOR DISMISSAL OF THE INDICTMENT ON SPEEDY TRIAL GROUNDS; IN THE ALTERNATIVE, THIS MATTER MUST BE REMANDED FOR THE PCR COURT TO ADDRESS THIS CLAIM.

II.

A.

We first address the trial court's finding that defendant's petition for PCR is procedurally barred pursuant to Rule 3:22-4.

PCR is New Jersey's analogue to the federal writ of habeas corpus. State v. Afanador, 151 N.J. 41, 49 (1997). It is the vehicle through which a defendant may, after conviction and sentencing, challenge a judgment of conviction by raising issues that could not have been raised on direct appeal and, therefore, ensures that a defendant was not unjustly convicted. State v. McQuaid, 147 N.J. 464, 482 (1997). Generally, a defendant must pursue relief by direct appeal; put another way, PCR "proceedings are not a substitute for direct appeal." State v. Cerbo, 78 N.J. 595, 605 (1979).

However, a defendant may use PCR "to challenge . . . [a] final judgment of conviction which could not have been raised on direct appeal." McQuaid, 147 N.J. at 482-83 (citing Preciose, 129 N.J. at 459).

> Any ground for relief not raised in a prior proceeding . . . is barred from assertion in a proceeding under this rule unless the court on motion or at the hearing finds

> (1) that the ground for relief not previously asserted could not reasonably have been raised in any prior proceeding; or
>
> (2) that enforcement of the bar to preclude claims, including one for ineffective assistance of counsel, would result in fundamental injustice; or
>
> (3) that denial of relief would be contrary to a new rule of constitutional law under either the Constitution of the United States or the State of New Jersey.

"[P]etitioners are rarely barred from raising ineffective-assistance-of-counsel claims on [PCR]" under New Jersey case law, Preciose, 129 N.J. at 459-60, and "[o]ur courts have expressed a general policy against entertaining ineffective-assistance-of-counsel claims on direct appeal because such claims involve allegations and evidence that lie outside the trial record." Id. at 460.

Here, we find that defendant's petition for PCR is not precluded by the procedural bar set forth by Rule 3:22-4. Based on the record before us, we cannot determine whether defendant requires factual evidence outside of the existing trial record to support of his ineffective assistance of counsel claim, and therefore we cannot definitively state that defendant could have reasonably raised this issue on direct appeal. Accordingly, we hold that it was in error to dismiss defendant's PCR application on procedural grounds.

14

B.

We next address defendant's contention that he received ineffective assistance of counsel for his trial attorney's failure to assert a violation of the right to a speedy trial.

In determining whether a defendant has established ineffective assistance of counsel, the claim must be evaluated under the two-prong Strickland test, where "a reviewing court must determine: (1) whether counsel's performance 'fell below an objective standard of reasonableness,'. . . and if so, (2) whether there exists a 'reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different.'" State v. Castagna, 187 N.J. 293, 313-14 (2006) (quoting Strickland, 466 U.S. at 688, 694); see also State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland test in New Jersey).

To establish a prima facie case for ineffective assistance of counsel, the defendant must prove counsel's deficient representation and "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." State v. Brewster, 429 N.J. Super. 387, 392 (App. Div. 2013) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). A defendant may satisfy the first prong of the Strickland test "by a showing that

counsel's acts or omissions fell outside the wide range of professionally competent assistance considered in light of all the circumstances of the case." State v. Allegro, 193 N.J. 352, 366 (2008) (quoting Castagna, 187 N.J. at 314). Furthermore, the second prong is met where defendant shows that counsel's deficient performance prejudiced defendant to the extent he was deprived of his right to a fair trial. Fritz, 105 N.J. at 58.

"The Sixth Amendment protects a defendant's right to a speedy trial after arrest or indictment." State v. May, 362 N.J. Super. 572, 595 (App. Div. 2003) (quoting State v. Long, 119 N.J. 439, 469 (1990)). "The right to a speedy trial is 'fundamental' and is imposed by the Due Process Clause of the Fourteenth Amendment on the States." Barker v. Wingo, 407 U.S. 514, 515 (1972).

Announced in Barker and subsequently adopted by our Supreme Court in State v. Szima, 70 N.J. 196, 200-01 (1976), a four-part test is applied to determine when a violation of a defendant's speedy-trial rights contravenes due process. The test requires courts to "consider and balance the '[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.'" State v. Tsetsekas, 411 N.J. Super. 1, 8 (App. Div. 2009) (quoting Barker, 407 U.S. at 530).

"No single factor is a necessary or sufficient condition to the finding of a deprivation of the right to a speedy trial." Id. at 10.  Moreover, our Supreme Court has "decline[d] to adopt a rigid bright-line try-or-dismiss rule," instead continuing its commitment to a "case-by-case analysis" under the Barker balancing test; it has acknowledged "that facts of an individual case are the best indicators of whether a right to a speedy trial has been violated." State v. Cahill, 213 N.J. 253, 270-71 (2013).

When a delay exceeds one year, it is considered presumptively prejudicial; such a delay triggers analysis of all of the Barker factors.  Cahill, 213 N.J. at 265–66.  We have previously cautioned, however, against deciding "how long is too long . . . 'by sole reference to the lapse of a specified amount of time.'"  State v. Detrick, 192 N.J. Super. 424, 426 (App. Div. 1983) (quoting State v. Smith, 131 N.J. Super. 354, 360 (App. Div. 1974)).  Legitimate delays, "however great," will not violate the defendant's right to a speedy trial if it does not specifically prejudice defendant's defense.  Doggett v. United States, 505 US. 647, 656 (1992).

Indeed, longer delays may "be tolerated for serious offenses or complex prosecutions."  Cahill, 213 N.J. at 266.  Similarly, defense-caused delays do not support a speedy trial violation and such delays are subtracted from the total

calculus.  United States v. Claxton, 766 F.3d 280, 294 (3d Cir. 2014) (citing United States v. Battis, 589 F.3d 673, 680 (3d Cir. 2009)); see also State v. Long, 119 N.J. 439, 470 (1990) (holding that "[a]ny delay that defendant caused or requested would not weigh in favor of finding a speedy trial violation" (quoting State v. Gallegan, 117 N.J. 345, 355 (1989))).  Of course, purposeful delay tactics weigh heavily against the State.  Barker, 407 U.S. at 531.

"The only remedy" for a violation of a defendant's right to a speedy trial "is dismissal of the charge."  Cahill, 213 N.J. at 276.  On appeal, "we reverse only if the court's determination is clearly erroneous."  Tsetsekas, 411 N.J. Super. at 10 (citing State v. Merlino, 153 N.J. Super. 12, 17 (App. Div. 1977)).

In this instance, the reasons for the four-and-a-half-year period between arrest and trial are seemingly attributable to both sides.  However, we do not have the benefit of a comprehensive Law Division opinion that divides the overall delay into discrete periods and then explains and evaluates the reasons for delay in each of these time periods.  Importantly, the PCR judge did not make specific findings as to the Barker factors.

There are many circumstances to consider, including but not limited to (1) the seriousness of the crimes; (2) the complexity and logistical challenges of an

investigation that required forensic analysis; (3) the number of judges assigned to preside over various events; and (4) numerous pretrial motions defendant filed, including his successful severance motion.

It is impracticable for us to review this record and exercise original jurisdiction pursuant to Rule 2:10-5 to decide the ultimate question whether defendant's right to a speedy trial was violated. See Tomaino v. Burman, 364 N.J. Super. 224, 234–35 (App. Div. 2003) (opining that appellate courts should exercise original jurisdiction "only with great frugality"). Moreover, the current record is not adequate to permit a fulsome review of the Barker factors. The circumstances explaining certain periods of delay, for example, may be outside the current record, in which event further factfinding may be necessary. Exercise of original jurisdiction is discouraged if factfinding is involved. State v. Micelli, 215 N.J. 284, 293 (2013) (quoting State v. Santos, 210 N.J. 129, 142 (2012)).

We therefore believe review of the Barker factors is best delegated to the trial court in the present matter. The trial court is better suited than we are to undertake "the difficult task of balancing all the relevant factors relating to the respective interests of the State and the defendant[ ]," and to provide "subjective

reactions to the particular circumstances [to] arrive[] at a just conclusion." Merlino, 153 N.J. Super. at 17.

As such, we remand the matter to the Law Division to (1) catalog and compartmentalize all of the discrete periods of delay; (2) determine and evaluate the specific reasons for delay; and (3) as to delay attributed to the State, determine whether the delay was the product of the case's complexity or other legitimate justification, or else was the product of purposeful delay tactics or mere inaction. The Law Division should apply the Barker factors in context of the two-pronged Strickland test for PCR.

Lastly, Defendant argues that he is entitled to an evidentiary hearing on his ineffective assistance of counsel claim. A court reviewing PCR petitions based on a claim of ineffective assistance of counsel should grant an evidentiary hearing only if a defendant establishes a prima facie showing in support of the request relief. Preciose, 129 N.J. at 462. Here, we leave it to the PCR court's discretion to determine whether an evidentiary hearing is needed in light of the standard set forth in Preciose.

Accordingly, because disposition of defendant's petition requires an articulation of specific findings of fact under the Barker factors and in light of the Strickland test, we are constrained to vacate the order denying the PCR

petition and remand for the PCR court to state separately findings of fact and conclusions of law and to determine whether an evidentiary hearing is required. This decision should not be understood to express any opinion on the merits or the need for an evidentiary hearing. Those matters are for the PCR court to consider in the first instance, recognizing the importance of PCR proceedings that the Supreme Court has addressed at length in its recent decisions.

Vacated and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION